IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EMPLOYER TRUSTEES OF W. PA TEAMSTERS and EMPLOYERS WELFARE FUND,<br>          Plaintiffs,<br><br>v.<br><br>UNION TRUSTEES OF W. PA TEAMSTERS, EMPLOYERS WELFARE FUND, THOMAS N. HEIDER, JOSEPH A. MOLINERO, JAMES W. MCCLELLAND, JR., ALBERT J. RUSH and THOMAS HUCK,<br>          Defendants. | 2:15-cv-1417 |

## MEMORANDUM OPINION

Pending before the are the MOTION TO DISMISS (ECF No. 8) filed by the Union Trustees of the Western Pennsylvania Teamsters and Employees Welfare Fund; and PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF No. 13) filed by the Employer Trustees of the Western Pennsylvania Teamsters and Employers Welfare Fund. The motions have been fully briefed and are ripe for disposition.

**I.    Background**

This case arises under Section 302(c)(5) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186(c)(5), and Section 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132. The parties are members of the Board of Trustees of the Western Pennsylvania Teamsters and Employees Welfare Fund, a multi-employer employee benefit plan under Section 3(37) of ERISA, 29 U.S.C. § 1002(37), that was established under Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). Of the ten Trustees, five are appointed by the employers; they are the Plaintiffs in this action. The remaining five are appointed by the

1

union; they are the Defendants in this action.

The Employer Trustees and the Union Trustees have equal voting strength. "In the event of a deadlock arising" between them, Section 3.15(a) of the Trust Agreement provides that the Trustees "may agree upon an impartial umpire to break such deadlock by deciding the dispute in question." Pls.' Ex. A at 20, ECF No. 18-1. Furthermore, if the Trustees cannot agree to an "impartial umpire within a reasonable period of time, then, either group of Trustees . . . may petition the United States District Court for the Western District of Pennsylvania to appoint such impartial umpire." *Id.* Language to this effect is required to be included in the Trust Agreement by Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5) (stating that "in the event the employer and employee groups deadlock on the administration of [the] fund . . . [their agreement must] provide[] that the two groups shall agree on an impartial umpire to decide such dispute, or in the event of their failure to agree within a reasonable time, an impartial umpire . . . shall, on petition of either group, be appointed by the district court . . ."). Under Section 3.15(b) of the Trust Agreement, the scope of any proceeding before the impartial umpire is "limited to the provisions of th[e] Trust Agreement . . . The impartial umpire shall have no jurisdiction or authority to change or modify the provisions of th[e] Trust Agreement . . . ." Pls.' Ex. A at 21.

The Employer Trustees allege, and the Union Trustees do not dispute, that "[s]ince October 4, 1989, the Trustees have approved the payment of compensation to certain Trustees that are lawfully eligible to receive compensation to cover attendance at regular meetings, Sub-Committee meetings, seminars, annual meetings and any other duties arising out of the Trustees' position with the Fund, in addition to normal expenses incurred in the performance of those with the Fund." Pls.' CSMF ¶ 13, ECF No. 11. The amount of compensation was initially set at $600 per month, but on December 3, 2008, the Trustees increased it from $600 to $1,000 per month.

"The Trustees continued to investigate and discuss the compensation of Trustees thereafter, authorizing Fund Counsel to obtain opinion letters from the Department of Labor on compensation eligibility issues." *Id.* ¶ 16.

At the Trustees' executive session on December 3, 2014, one of the Employer Trustees moved to pay compensation to eligible Trustees in "the amount of $600.00 per Trustee Sub-Committee Meeting and the amount of $600.00 per monthly Trustee Meeting, to be paid upon the Trustee's attendance at [the] meetings." *Id.* ¶ 17. The Employer Trustees voted in favor of the motion, and the Union Trustees voted against it, leaving the Trustees deadlocked. As a result, the Employer Trustees sought to refer the dispute to arbitration, as envisioned by the LMRA and the Trust Agreement. The Union Trustees initially refused, arguing that the two Employer Trustees who voted for the measure were invalidly appointed. Eventually, though, the Union Trustees changed course (probably because Fund counsel provided a legal memo explaining that the Employer Trustees were validly appointed) and agreed that the dispute was arbitrable. The arbitration was scheduled for December 21, 2015.

In late August 2015, a dispute arose about whether the Employer Trustees should have to turn over income tax returns and other financial information belonging to the Employer Trustees who might be eligible to receive compensation. After the Employer Trustees declined to provide the information, the Union Trustees again refused to go to arbitration, taking the position that the Trust Agreement does not authorize the proposed payments to the Trustees.

Thereafter, the Employer Trustees initiated this action, petitioning the Court for the appointment of an arbitrator to settle the deadlock. (ECF No. 1). The Employer Trustees also brought claims against the Union Trustees for breach of fiduciary duty under Section 404(a)(1) ERISA, 29 U.S.C. § 1104(a)(1). The Union Trustees filed their motion to dismiss on December

3

29, 2015, arguing that an arbitrator cannot be appointed to decide the parties' dispute because the Trust Agreement does not authorize the payment of compensation to Trustees and so any decision by an arbitrator would exceed her authority under Section 3.15(b) of the Trust Agreement. (ECF No. 8). The Employer Trustees' motion for partial summary judgment followed on January 19, 2016. (ECF No. 13). Their position is that the Trust Agreement can be read to allow such payments, and it should be left to the arbitrator to decide which side's interpretation is correct.

**II.     Discussion**

Under Section 302(c)(5) of the LMRA, this Court is empowered "to appoint an impartial umpire, upon petition, in the event the trustees deadlock on an issue of trust fund administration and are unable to agree upon which umpire should resolve the dispute." *Employer Trustees of Graphic Commc'ns Int'l Union, Local 1-B Health & Welfare Fund v. Union Trustees of Graphic Commc'ns Int'l Union, Local 1-B Health & Welfare Fund*, 428 F. Supp. 2d 997, 1002 (D. Minn. 2006). "The compulsory, statutory mechanism of arbitration is triggered once the trustees deadlock on an important aspect of trust administration." *Id.* (citing *Hawkins v. Bennett*, 704 F.2d 1157, 1160 (9th Cir. 1983); *Geigle v. Flacke*, 768 F.2d 259, 262–63 (8th Cir. 1985)). There is no dispute that the parties have reached a deadlock. The question, then, is whether the issue over which they are deadlocked is amenable to resolution by an arbitrator. That is, is the issue a matter of "trust administration"?

The Third Circuit Court of Appeals has not defined that phrase. However, other courts have considered this question and come to "at least three different conclusions." *Citrin v. Erikson*, 911 F. Supp. 673, 681 (S.D.N.Y. 1996). "The Second Circuit defines an issue of trust administration as any issue which the trustees have authority to decide under the trust

4

agreement." *Id.* (citing *Mahoney v. Fisher*, 277 F.2d 5, 6 (2d Cir. 1960); *Barrett v. Miller*, 276 F.2d 429, 431 (2d Cir. 1960); *Singleton v. Abramson*, 336 F. Supp. 754, 757 (S.D.N.Y. 1971)). Thus, "if the answer sought by the proponent [of the measure] would require action plainly beyond the powers conferred upon the trustees," an arbitrator cannot be appointed. *Barrett*, 276 F.2d at 431. "In other words, while a trustee petitioning for the appointment of an umpire need not demonstrate that his interpretation that the issue was one the trustees could decide is the correct one . . . he must at least establish that it is a possible one." *Id.* at 432. However, "a court need not order arbitration when it is prepared to say 'with positive assurance that the contract is not susceptible to an interpretation to cover the asserted dispute.'" *Id.* (quoting *Local 1912, Int'l Ass'n of Machinists v. U.S. Potash Co.*, 270 F.2d 496, 498 (2d Cir. 1959)). "In addition to looking to the terms of the Trust Agreement, other circuits have recognized a distinction between ordinary matters which are considered to constitute administration and extraordinary matters which do not." *Hodges v. Holzer*, 707 F. Supp. 232, 235 (M.D. La. 1988) (citing *Ader v. Hughes*, 570 F.2d 303, 307 (10th Cir. 1978)). "The Ninth Circuit has combined the foregoing approaches with an examination as to whether the dispute involves a structural deficiency as opposed to day-to-day fiduciary administration of the fund." *Id.* (citing *Hawkins*, 704 F.2d at 1157).

In *Poston v. Caraker*, 378 F.2d 439 (5th Cir. 1967), the Fifth Circuit Court of Appeals addressed a situation similar to the one before this Court. The trust agreement at issue in *Poston* provided that "the trustees shall be reimbursed out of the Fund for all reasonable and necessary expenses which may occur in the performance of their duties." *Id.* at 442. As in this case, the employer trustees voted to compensate themselves "as a regular expense for attending trustee meetings," the union trustees voted against the proposal on the basis that the trust agreement did not allow the payments, and a deadlock ensued. *Id.* The district court, however, refused to

5

appoint an arbitrator, siding with the union trustees. *Id.* at 441.

On appeal, the Fifth Circuit, citing the Second Circuit's *Barrett* decision, explained that "if § 186(c)(5) does not expressly allow compensation to trustees, or if the Declaration of Trust is not susceptible to an interpretation that compensation is allowable, the [district court] committed no error in dismissing the petition." *Id.* After acknowledging that compensation may be permissible under the statute, the Fifth Circuit went on to hold that the district court's decision was still correct inasmuch as the trust agreement did not allow the trustees to be compensated. *Id.* As the court reasoned, "[t]he closest approach to compensation in the cited language of the trust instrument is that the 'trustees shall be *reimbursed* out of the Fund for all reasonable and necessary *expenses* which may occur in the performance of their duties'." *Id.* at 443 (emphasis in original). In the court's view, however, "reimbursement for necessary expenses, especially in the construction of a statutory trust as we have here, cannot be held to mean or include compensation for services rendered." *Id.* Thus, the Fifth Circuit concluded that the district court "was right when it found that the absence of authorization in the trust instrument was dispositive of the case, and there was no legal basis upon which [the district court] could have appointed an impartial umpire." *Id.*

This Court is persuaded by the Fifth Circuit's reasoning in *Poston*, which is far more analogous to this case than any of the cases cited by the parties. Accordingly, if the Trust Agreement "is not susceptible to an interpretation that compensation is allowable," then this Court has no legal basis to appoint an arbitrator. *Id.* at 441.

The Trust Agreement provides that the Trustees have the "power and authority to use and apply the Trust Fund," *inter alia*,

> [t]o pay or provide for the payment of all reasonable and necessary expenses . . .
> (ii) of administering the affairs of this Health and Welfare Fund, including the

6

> employment of such administrative, legal, expert and clerical assistance, the purchase or lease of such premises, materials, supplies and equipment and the performance of such other acts, as the Trustees, in their sole discretion, find necessary or appropriate in the performance of their duties; and (iii) of reimbursement for expenses and the payment of allowances properly and actually incurred in the performance of their duties with the Health and Welfare Fund, as permitted by law including, without limitation, attendance at meetings and other functions of the Board of Trustees or its committees or while on the business of the Board of Trustees, and attendance at institutes, seminars, conferences or workshops for or on behalf of the Health and Welfare Fund.

Pls.' Ex. A at 22-23.

The Employer Trustees argue that the phrase "'payment of allowances' coupled with the express reference to payments for attendance at meetings can be reasonably interpreted to permit compensation for attendance at meetings." Pls.' Br. at 10, ECF No. 16. "In fact," the Employer Trustees contend, "the Trustees have interpreted the Trust Agreement in this manner for approximately 26 years." *Id.* The Union Trustees, unsurprisingly, view things differently. From their perspective, under Section 4.2, "the only expenses that can be paid to Trustees are those reasonable and necessary expenses which are *actually incurred*, such as the expense of travelling to a meeting and/or an allowance for items such as mileage, airfare, or meals." Defs.' Br. at 10, ECF No. 9 (emphasis in original). Conversely, they argue, "[Section 4.2] simply does not include 'compensation' for attendance," and nor does any other provision in the Trust Agreement allow the Trustees to "be 'compensated' for attendance at Trustee meetings or Trustee Sub-Committee meetings." *Id.*

The Union Trustees' interpretation is the only interpretation that the text of the provision can support. To "reimburse" means "to pay back to someone." *Merriam–Webster's Collegiate Dictionary* 983 (10th ed. 2002). To "incur" means "to become liable or subject to: bring down upon oneself < *incur* expenses>." *Id.* at 589 (emphasis in original). So to "reimburse" someone for "expenses . . . properly and actually incurred" means "to pay back" expenses that someone

7

has already "become liable or subject to" or brought "down upon oneself." As in *Poston*, there is no way to shoehorn "compensation for attendance at meetings" into this definition.

Now, unlike in *Poston*, the Trust Agreement here also allows for "the payment of allowances." Nevertheless, there is a distinction between paying someone "compensation" and paying someone an "allowance" – a distinction the Employer Trustees' argument completely ignores. An "allowance" is "a sum granted as a reimbursement or bounty or for expenses [salary includes cost-of-living—]. . ." *Id.* at 31. It is typically thought of (in the law, at least) as money that is paid to cover expenses a person will eventually have to incur or has incurred in the past (e.g., a *per diem* allowance or a mileage allowance) irrespective of what the person's actual expenses may be. *See, e.g.*, 26 C.F.R. § 1.62–2 (discussing "reimbursements and other expense allowance arrangements" under the Tax Code). "Compensation," on the other hand, refers to payment for services rendered. *See Black's Law Dictionary* (10th ed. 2014) (defining "compensation" as "[r]emuneration and other benefits received in return for services rendered; esp., salary or wages"). The Tax Code, for example, allows taxpayers to deduct "salaries or other *compensation for personal services actually rendered*" as ordinary business expenses. 26 U.S.C. § 1629(a)(1) (emphasis added). And ERISA allows plan fiduciaries to receive "reasonable *compensation for services rendered*," provided that certain other conditions are met, in addition to "reimbursement of expenses properly and actually incurred." 29 U.S.C. § 1108(c)(2) (emphasis added).

The payments the Employer Trustees are attempting to approve are a form of "compensation," not "allowances." They have, themselves, treated them as such since 1989. When they first voted to allow the "payment of compensation" to eligible Trustees in 1989, the minutes from their meeting reflect that the payment was "for services provided to the Fund[.]"

8

Pls.' Ex. B at 9. More recently, when Fund counsel sought an opinion from the Department of Labor "concerning the payment of compensation to a Welfare Fund Trustee," counsel explained that the "monthly compensation paid by the Welfare Fund to the eligible Trustees *relates to services* for attendance at regular Board of Trustees' meetings, Sub-Committee meetings, Seminars and Annual Meetings, and any other duties required of the Trustees." Pls.' Ex. J at 2 (emphasis added). All the while, the Trustees' concern with these payments focused on whether they were legal under the section of ERISA that allows "compensation for services rendered" by certain eligible trustees. 29 U.S.C. § 1108(c)(2). They were never concerned, however, about whether there was a connection between the amount of expenses the Trustees were expected to incur attending meetings and the amount of the monthly payments, as one would expect if the Trustees were receiving an "allowance" in the true sense of the term. Indeed, the Trustees made it clear in 1989 that "such compensation *shall not be in lieu of reimbursement by the Fund for expenses properly and actually incurred* in the performance of such Trustee's duties with the fund." Pls.' Ex. B at 9 (emphasis added). And for some time thereafter, they apparently continued to allow the payment of "compensation . . . *in addition to normal expenses incurred* in the performance of those with the Fund." Pls.' CSMF ¶ 13 (emphasis added).

Section 4.2 cannot be read to allow this.[1] By using the terms "reimbursement" and "allowances," which connote payment for expenses incurred not services rendered, the drafters of the Trust Agreement unambiguously showed their intent to limit the permissible payments to

---

1.  While the Employer Trustees would have this Court look to the Trustees' past practice as evidence that their reading is reasonable, the Court of Appeals has made clear that "'extrinsic evidence of "past practice" [can] be admitted, if at all, only to resolve an ambiguity in the CBA.'" *Akers Nat. Roll Co. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union*, 712 F.3d 155, 161 (3d Cir. 2013) (quoting *Quick v. N.L.R.B.*, 245 F.3d 231, 247–248 (3d Cir. 2001)). To be sure, this case does not involve the interpretation of a CBA, but the Court sees no reason why the same principle should not apply with respect to interpreting the Trust Agreement. Thus, even if this matter were referred to arbitration, the arbitrator could not rely on the Trustees' past practice to trump the clear and unambiguous language in the Trust Agreement, which contains no hint that compensation for services rendered is allowed in addition to "reimbursements and payment of allowances."

those that have some connection to expenses the Trustees incurred in the performance of their duties. For example, the Trustees can reimburse themselves for expenses incurred while attending meetings and/or pay themselves an allowance intended to cover the expenses associated with attending meetings. But they cannot, under any possible reading of the provision, pay themselves monthly compensation, ostensibly for "attending meetings," and then also give themselves reimbursements and/or allowances for their expenses incurring attending those very same meetings, which is exactly what they are attempting to do. The use of the phrase "properly and actually incurred" directly following the phrase "payment of allowances" confirms this: only payments – be they in the form of reimbursements or allowances – that have some relation to expenses "properly and actually incurred" by the Trustees are allowed. The Employer Trustees' interpretation would read that phrase right out of the Agreement. Insofar as the Trust Agreement cannot be interpreted to support the Employer Trustees' position, this Court cannot appoint an arbitrator to decide the parties' deadlock.

## III. Conclusion

For the reasons hereinabove stated, the Union Trustees' motion to dismiss will be **GRANTED**, the Employer Trustees' motion for partial summary judgment will be **DENIED**, and this action will be **DISMISSED WITH PREJUDICE**. An appropriate Order follows.

McVerry, S.J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **EMPLOYER TRUSTEES OF W. PA TEAMSTERS and EMPLOYERS WELFARE FUND,**<br>Plaintiffs,<br><br>v.<br><br>**UNION TRUSTEES OF W. PA TEAMSTERS**, **EMPLOYERS WELFARE FUND, THOMAS N. HEIDER**, **JOSEPH A. MOLINERO, JAMES W. MCCLELLAND, JR.**, **ALBERT J. RUSH** and **THOMAS HUCK**,<br>**Defendants.** | 2:15-cv-1417 |

## ORDER

**AND NOW**, this 1st day of March, 2016, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the MOTION TO DISMISS (ECF No. 8) filed by the Union Trustees of the Western Pennsylvania Teamsters and Employees Welfare Fund is **GRANTED**, and PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF No. 13), filed by the Employer Trustees of the Western Pennsylvania Teamsters and Employers Welfare Fund is **DENIED**. It is further **ORDERED** that this case is **DISMISSED WITH PREJUDICE**. The Clerk of Court shall docket this case **CLOSED**.

BY THE COURT:

s/Terrence F. McVerry
Senior United States District Judge

cc: all counsel of record via CM/ECF